WILLIAM T. SHYNE, Respondent, *v.* L. R. MACK, INC., Appellant.

Third Department, March 17, 1922.

Conversion — motor truck sold to plaintiff by defendant on conditional sale contract — truck returned to defendant's shop for repairs — redelivery refused by defendant till last payment made on truck — verdict in favor of plaintiff against weight of evidence.

In an action to recover damages for the conversion of a motor truck it appeared that the plaintiff purchased the truck from the defendant on a conditional sale contract, one condition of the contract being that the truck should remain the property of the defendant until all of the payments had been made; that at a time when there remained unpaid, but not yet due, the last note given for the purchase price of the truck, the plaintiff took the truck to defendant's shop for repairs; that there was a conflict in the evidence as to whether the defendant refused to redeliver the truck to the plaintiff or whether the plaintiff,

on the request of the defendant, voluntarily left the truck in defendant's possession until the last note was paid, and that the truck was promptly delivered to plaintiff's agent as soon as the note was paid.

*Held,* that the verdict in favor of the plaintiff to the effect that there was an actionable conversion of the truck was against the weight of the evidence.

HINMAN, J., and COCHRANE, P. J., dissent, with opinion.

APPEAL by the defendant, L. R. Mack, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 2d day of July, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

*John F. O'Brien* [*Borden H. Mills* of counsel], for the appellant.

*Thomas F. Powers,* for the respondent.

VAN KIRK, J.:

The plaintiff contracted in March, 1918, to purchase an automobile truck from the defendant, one condition of the contract being that the truck should remain the property of the defendant until all of the payments had been made. The contract did not provide the specific times for payment, but that the payments should be made without further demand. Notes were given for the balance unpaid at the time of the purchase in the sum of about $3,100. At the time of the transaction complained of, October, 1920, there remained unpaid one $200 note, due November 5, 1920, which note, given by the plaintiff to the defendant and indorsed by it, had been discounted at the First National Bank of Albany. The plaintiff at the time of purchase was given possession of the truck and used it until October, 1920, when he delivered it to Murphy & Ronan of Albany to be painted. It was discovered that the truck needed repairs and plaintiff directed that it be taken to the defendant's repair shop, where it was received and the repairs completed on October twentieth. The plaintiff paid the repair bill. The plaintiff testified that he, after paying for the repairs, demanded possession of the truck, but Mr. Bigley, agent of the defendant in its shop, told him he could not have the truck, that there was trouble between him and Mr. Mack and "we are going to hold this truck; * * * you can't have it." Mr. Mack was the president of the defendant. Mr. Bigley says that he told plaintiff at the time that he would like to have plaintiff leave the truck in the shop until he paid his note; that plaintiff replied, "All right, the truck isn't working and I might as well leave it here as to pay storage on it in Troy;" that there was nothing said about a dispute between Mr. Mack and the plaintiff. Mr. Gebhard, repairman for the defendant, says that he heard Bigley say to the plaintiff

at this time, "Will you leave the truck here?" and heard plaintiff say, "I would just as soon leave it here as to pay storage in Troy; I have no work for it." This dispute is the only dispute in the evidence. The truck was left with the defendant and no other demand has been made of the defendant by plaintiff for the truck. Two days later, on October twenty-second, Mr. Bigley was informed by the First National Bank of Albany that plaintiff was at the bank and had paid the note. Mr. Bigley, on the same day, directed that the truck be returned to Murphy & Ronan and on that day, or the following morning, October twenty-third, it was returned. The plaintiff was evidently consulting his attorney, because, after he had left the truck at defendant's shop and before Mr. Bigley had received word from the First National Bank that the note had been paid, his attorney telephoned Mr. Ronan and asked if the truck had been returned and Mr. Ronan replied it had not. As soon as Mr. Ronan received the truck from the defendant he telephoned to plaintiff's attorney that the truck had been returned. The attorney replied that plaintiff had no use for it and in substance did not care what Ronan did with it. On the twenty-seventh day of October this action for conversion of the truck was begun without any further communication with the defendant.

We think the verdict is so against the weight of evidence that a new trial should be granted. The testimony of Mr. Bigley and Mr. Gebhard as to the conversation with plaintiff on October twentieth with reference to retaining the truck in the defendant's shop, is strongly corroborated by other facts in the case. The plaintiff was not using the truck; he had taken it to Murphy & Ronan to be painted; he wanted it returned to Murphy & Ronan after the repairs had been made. It was retained by the defendant but two or three days and nothing indicates that any loss whatever was occasioned to the plaintiff thereby. If the truck was not retained because the $200 note had not been paid, why did the plaintiff go immediately to the bank and pay it more than two weeks before it was due? No interest is saved by such prepayment of the note. Also, if the truck was not retained because of the failure to pay the note, why did Mr. Bigley, immediately on receiving word that the note had been paid, return the truck to the plaintiff at Murphy & Ronan's, where it was to be painted? The truck had been used two years and a half and at the time needed painting and repairs and it is not unreasonable that the defendant should desire the final payment for the truck to be made.

Where one entitled to the possession of property assents to the retention of the property by the owner, he may not recover for conversion thereof. (38 Cyc. 2009.)

The truck came into the hands of the defendant lawfully under the direction of the plaintiff and the legal title was then in the defendant. After the plaintiff paid his note on October twenty-second, the defendant returned the truck to Murphy & Ronan, to whom plaintiff had directed it to be delivered for painting. This action thereafter, and on October twenty-seventh, was begun without further demand from plaintiff.

Upon this record we disapprove of the finding that there was an actionable conversion of the truck.

The judgment should be reversed and a new trial granted.

All concur, except Hinman, J., dissenting, with an opinion, in which Cochrane, P. J., concurs.

Hinman, J. (dissenting):

The counsel for appellant contends that there is no conversion here because the right to maintain an action at law for conversion depends upon ownership and not upon the right of possession; that a person who has the right of actual possession may maintain conversion against any person except the owner.

While this is true as a general proposition and indicated as such by many of the opinions, there seem to be cases where a person having a special property and the right of possession may maintain conversion against the person holding the general property in the chattel.

Take the case of a bailee who has the right of possession for a definite time. He may maintain conversion against the bailor. (*McConnell* v. *Maxwell*, 3 Black. [Ind.] 419; 26 Am. Dec. 428; *Simpson* v. *Wren*, 50 Ill. 222; 99 Am. Dec. 511; *Sowden* v. *Kessler*, 76 Miss. App. 581; *Hickok* v. *Buck*, 22 Vt. 149; *Roberts* v. *Wyatt*, 2 Taunt. 268; Elliott Cont. § 3074; 6 C. J. 1152, § 117.)

In *McConnell* v. *Maxwell* (*supra*) it was held that a bailee may have trover against the bailor or his vendee, where the possession of the property has been fraudulently taken from the bailee in contravention of his rights. The court said: " In support of the action of trover, it is necessary for the plaintiff to prove a right to the property, either absolute or special, and a right to the possession at the time of the conversion complained of; for either an absolute or a special property will support the action. * * * Cases of special property, entitling to the action of trover are numerous, embracing sheriffs after a levy, carriers, bailees, trustees, etc. During the continuance of such special property and the right of possession, the right to the action of trover is perfect. In the case of a bailee, until the conditions of the bailment are complied with, his rights are protected not only against a stranger, but against the general

owner. Thus, in *Roberts* v. *Wyatt*, 2 Taunt. 268, it was decided, that if a person who has a temporary property in goods, deliver them to the general owner for a special purpose, he may, after that purpose is answered, upon a demand and refusal, maintain trover for them. The same doctrine is laid down in 1 Chit. Pl. 151; 2 Saund. Pl. & Ev. 878;* and 3 Stark. on Ev. 1481."

In *Simpson* v. *Wren* (*supra*) it was held that a borrower of a chattel will not be permitted to set up title in himself until he has restored the chattel to the lender. The court said: " The proposition is undeniably true that a bailee of property may recover it of his bailor, if he can show that he is lawfully entitled to the possession and use under a valid agreement, although the latter may be the owner. * * * A person claiming to own property should not be permitted to get possession by such a fraud, and then refuse to restore it because he claims to own it. This, in many cases would give him an undue advantage, as it would impose the burden of proving ownership on the lender, by a preponderance of evidence, while, had it remained in his possession, the burden would have been on the opposite party. We are therefore of the opinion that if appellee borrowed the gun, he should not be permitted to set up title in himself until he has restored it to appellant."

In *Sowden* v. *Kessler* (*supra*) it was held that a bailee may maintain replevin against all persons except the true owner, and even against him if he has a lien for services, advances and the like.

In *Hickok* v. *Buck* (*supra*) the defendant leased to the plaintiff a farm for one year and by the contract was to provide a horse for the plaintiff to use upon the farm during the term. At the commencement of the term he furnished a horse, but took him away and sold him before the expiration of the term without providing another. Held, that the plaintiff acquired a special property in the horse by the bailment and was entitled to recover in an action of trover for the horse so taken away, damages for the loss of the use of the horse during the rest of the term. The court said: " The general property in the mare remained in the defendant, but by the bailment the plaintiff acquired a special property in her, and was entitled to the exclusive use and control of her, during the continuance of the lease. And the defendant's interference in the matter, by taking the mare against the will of the plaintiff, is to be regarded the same, as though done by one who had no interest in her."

In *Roberts* v. *Wyatt* (*supra*) there was a contract for the sale of an estate and an abstract of title to be made at the vendor's expense was delivered to the purchaser who was held in title

* See 4th Am. ed.— [REP.

to the temporary custody of it. The owner obtained a return of it and then refused to redeliver it. An action of trover was begun and it was held that the plaintiff had a temporary property on which he could recover not only against a stranger but against the proprietor of the estate, and that property continues until all the purposes are answered for which the abstract was delivered. This decision was sustained on the right of possession which the plaintiff clearly had at the time. Elliott on Contracts (§ 3074) says: " As in all bailments, the bailee has the right of possession pending the accomplishment of the bailment purpose. Since in this case that purpose is the use of the chattel bailed, the bailee has the right to the exclusive use and control of the thing for the purpose for which it was hired, as against all the world, including the letter, or an attaching creditor of the letter, and this right is not lost by redelivery to the owner, for a temporary purpose."

In the case of a bailment the bailor has title. The bailee has simply the right of possession for a definite purpose which is held to be a special property. In the case at bar the defendant had title and the plaintiff had the right of possession which continued until and unless the terms of sale were violated. The plaintiff, therefore, had a right of possession and special property when he delivered the truck to the defendant. The defendant then became a bailee and when the purpose of the bailment, to wit, the repair of the car and payment therefor, was accomplished, it no longer had any right to the possession of the truck under this bailment. Whatever rights it had left were the rights of a conditional vendor. These rights consisted of the general property in the truck, but the plaintiff had a special property and the right to immediate possession and when the defendant deprived him of this right of immediate possession and his dominion over his special property in the truck, it was guilty of conversion.

The whole question hinges upon the rights existing between a conditional vendor and a conditional vendee. Does a conditional vendee have a special property in the chattel which is the subject of the sale? Counsel for appellant indicates that he has not, that the conditional vendee has no legal title but simply an equitable title. I think he has more and that he has a special property when he has a right of possession under the precise terms of his contract.

It is difficult to make a distinction between a bailment and a conditional sale. The real distinction seems to be that in bailment the identical thing delivered is to be restored or the proceeds after sale, whereas in a conditional sale there is an agreement, express or implied, to pay money or its equivalent for the thing delivered and there is no obligation to return the thing delivered. Under

these circumstances it would seem clear to me that if the bailee has a special property and right to possession as against even the holder of the general title a stronger case if anything is made in the case of a conditional vendee. At any rate, I cannot see why the same principle should not apply to a conditional vendee. I have not, however, been able to find any cases holding to the proposition in question so far as the conditional vendee is concerned.

Of course this right to possession the conditional vendee may waive. It is urged on the part of the defendant that the plaintiff did waive the right to possession and voluntarily left the property in the possession of the defendant. The plaintiff, however, denies this and a question has arisen in this case as to whether the weight of the evidence is against the contention which was approved by the jury, namely, that the plaintiff had not so waived his rights. Mr. Justice VAN KIRK seems to think that the weight of the evidence is the other way.

When it is considered that all the witnesses who testified were interested witnesses and that L. R. Mack, the president of the defendant, and the plaintiff had trouble prior to this transaction, and that it was the purpose of the plaintiff to have the truck painted after the frame was straightened and had made arrangements for this, it seems to me more probable that the plaintiff's story was entitled to the greater weight.

My conclusion is that the judgment and order should be affirmed.

COCHRANE, P. J., concurs.

Judgment and order reversed on the law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves of the finding that there was an actionable conversion of the truck.